## PAT DILLARD v. THE STATE.

*No. 7850. Decided June 11.*

1. **Charge of Court—Aggravated Assault and Battery.—**Where on a trial for homicide the evidence showed that deceased, who was drunk, followed the defendant around for some time, and finally into defendant's yard, and had advanced to within about fifteen feet of defendant, when defendant picked up his shot gun loaded with small No. 6 bird shot, and told him if he did not stop he would kill him, and did shoot him in the breast and kill him, *held*, that the court did not err in refusing to charge the jury upon aggravated assault and battery; and further, that the evidence supports a conviction for manslaughter, the defendant himself stating that when the deceased came into the yard, " if there was anything in his hands I did not see it. I could see him all the time after he first started after me."

2. **New Trial—Newly Discovered Evidence—Hearsay.—**Where the substance of the newly discovered evidence was that the absent witnesses would testify that, about an hour or an hour and a half subsequent to the homicide, they heard one of the deceased's sons say that deceased, when he went into defendant's yard, had a knife in his hand, and that he put it back into his pocket after he was shot; *held*, that if the testimony was true, it was but hearsay, and therefore inadmissible as evidence.

APPEAL from the District Court of Hill. Tried below before Hon. J. M. HALL.

Appellant was tried on an indictment charging him with manslaughter, for the killing of one W. R. Garrett. At his trial he was found guilty

of manslaughter, and his punishment was assessed at two years confinement in the penitentiary.

*J. M. Johnson,* for appellant, propounded the following propositions, supported by the authorities cited:

1. The court erred in failing to charge the jury the law of aggravated assault and battery and its definition, for the facts in evidence justified such charge.

2. If, viewed from the evidence, appellant shot deceased with No. 6 small bird shot, and if said shot at the distance fired would not necessarily cause death, and if the intent of appellant in firing the shot was not to kill deceased, but to check and prevent deceased from making an assault upon appellant, then he would not be guilty of manslaughter, but, if anything, only an aggravated assault and battery. There must be a specific intent to kill. White v. The State, 13 Texas Ct. App., 259; Harrell v. The State, Id., 374; Gillespie v. The State, Id., 415; Courtney v. The State, Id., 502; Davis v. The State, 15 Texas Ct. App., 475; Prewitt v. The State, 20 Texas Ct. App., 129; Long v. The State, 36 Texas, 6; Willson's Crim. Stats., sec. 857.

3. If appellant made the assault upon the deceased voluntarily, without deliberate design to kill, and with an instrument not necessarily capable of producing death, and in such a manner as evidences no intention to take life, and there are extenuating circumstances showing that appellant went very far to avoid the act, and was continuously hounded by the deceased, the killing would only be an aggravated assault and battery. Yanez v. The State, 20 Texas, 656; Willson's Crim. Stats., secs. 858, 859; Anderson v. The State, 1 Texas Ct. App., 730; Lockwood v. The State, Id., 749; Agitone v. The State, 41 Texas, 501; Walker v. The State, 7 Texas Ct. App., 627; Willson's Crim. Stats., sec. 857.

4. If newly discovered evidence has come to the defendant since the trial and conviction, and if it was not owing to a want of diligence on his part that it was not discovered sooner, that on another trial it would probably produce a different result, and that it is competent, material to the issue, going to the merits, not merely cumulative, corroborative, collateral, or to impeach a witness, the trial court abuses the discretion confided in him in refusing a new trial. Burns v. The State, 12 Texas Ct. App., 269; White v. The State, 10 Texas Ct. App., 167; Willson's Crim. Stats., sec. 2544.

*R. H. Harrison,* Assistant Attorney-General, for the State.—The matters complained of on appeal are presented in the motion and supplemental motion for a new trial. The special instructions requested by appellant, and refused, constitute no error, because the same, in so far as applicable to the facts of the case, were fully embraced in the general

charge of the court.   The fourth ground of the motion, that "the charge of the court was erroneous," is too general to be considered.   Williams v. The State, 22 Texas Ct. App., 497; Smith v. The State, 22 Texas Ct. App., 316; Hennessy v. The State, 23 Texas Ct. App., 340.

The verdict of the jury is sufficient.   Walker v. The State, 13 Texas Ct. App., 618; Koontz v. The State, 41 Texas, 570; Curry v. The State, 7 Texas Ct. App., 91.

The supplemental motion is based upon newly discovered evidence. This presents no error; first, because the evidence does not come within the rule of newly discovered evidence, and is immaterial and goes only to the question of impeachment.

There is no error in the judgment, and it should be affirmed.

DAVIDSON, JUDGE.—This appeal is prosecuted from a conviction of manslaughter, in which the penalty was assessed at confinement in the penitentiary for a term of two years.   The evidence, in substance, discloses, that deceased, accompanied by two of his children, both young boys, was returning from a neighboring town.   The deceased was drunk, and asleep in his wagon.   On reaching the home of defendant the wagon halted in the public road, which ran between his residence on one side and his horse lot on the other.

About this time defendant returned from a fishing excursion, left his gun, which he carried with him, at or near the well in the yard, gathered some weeds for his hogs, and started with same in the direction of the lot where his hogs were.   Upon approaching the wagon, defendant was requested by two parties who were passing to assist the little boys in getting their father home.   He went on into the lot, and soon returned to the wagon, and remarked to the boys that they had better get their father away " damn quick, or there was going to be a racket."   At this juncture deceased waked up, looked at defendant, and asked who he was. Being informed it was defendant, he said, " Give me my pistol; I will kill him."   He then got out of the wagon, and followed defendant, who had started off in the direction of the horse lot.   Deceased staggered along after defendant, who had gotten over into the lot and disappeared in a branch.   Defendant almost immediately reappeared in the road, and in view of deceased, who again followed him.   Defendant got over the fence into the yard, saying to deceased and his sons, " If you don't get him off from here, damn him, I will kill him."   He went to the well and picked up his gun.   The well was thirty feet from the yard gate. Deceased entered the yard, at the gate, and had proceeded about fifteen feet inside the yard, and within about the same distance of defendant, when he shot him.

Defendant testified that, he " spoke to him (deceased), and told him to stop, but he kept coming.   When he had gotten about fifteen feet into

the yard, I called to him again to stop, and said to him, 'If you come any further, God damn you, I will kill you.' He still kept coming, and I raised my gun and fired at his breast. The gun was loaded with small bird shot, I think No. 6's." He further testified: "When Garrett (the deceased), came into the yard, if there was anything in his hands, I did not see it. I could see Garrett all the time, after he first started after me. I could see him all the time. If he had anything in his hands I did not see it." Upon being shot, deceased turned, walked back to the road, fell, and died.

In this connection, it is insisted by defendant, that the conviction is not supported by the evidence, and that the court erred in refusing to give instructions requested by him, submitting the issue of aggravated assault and battery. The instruction was asked upon the theory that defendant's purpose in shooting deceased was to check his advance upon him, and not with the intent of killing him. In this view we can not concur. The defendant's testimony excludes this idea, and clearly shows that his intent was to kill, provided deceased did not stop his advances upon him. Besides, he testified that he shot the deceased in the breast, and the facts show, at the distance of only fifteen feet. We are of opinion that the court did not err in refusing to charge upon aggravated assault and battery; and further, that the evidence supports the conviction.

To his motion for a new trial defendant attaches the affidavits of Kennedy and Blocker, setting up newly discovered testimony. The substance of this testimony is, that in about an hour or an hour and a half subsequent to the homicide, they heard Arthur Garrett, one of the sons of deceased, who witnessed the difficulty, say that deceased, when he went into the yard of defendant, had a knife in his hands, and upon being shot put it back into his pocket. If this be true, it is hearsay, and inadmissible as evidence.

The court charged the law of self-defense as favorably as the facts warranted, if, in fact, such a charge was called for by the evidence. Finding no error in the record, the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.